# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **VIRGINIANS FOR APPROPRIATE** | ) | |
| **ROADS, et al.,** | ) | **Civil Action No. 7:07CV00587** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **J. RICHARD CAPKA,** | ) | |
| **ADMINISTRATOR, et al.,** | ) | |
| | ) | **By: Hon. James C. Turk** |
| **Defendants.** | ) | **Senior United States District Judge** |

This case is before the court on cross-motions for summary judgment submitted by plaintiffs Virginians for Appropriate Roads, Virginia Forest Watch, Kristin Peckman, and Bernard Goerhring (collectively "Plaintiffs"); and by defendants J. Richard Capka, Administrator of the Federal Highway Administration ("FHWA"); Mary Peters, Secretary of the United States Department of Transportation; Roberto Fonseco-Martinez, FHWA Virginia Division Administrator; and David S. Ekern, Commonwealth Transportation Commissioner for the Commonwealth of Virginia (collectively "Defendants"). The issues have been briefed and the court has heard oral argument making the matters ripe for decision. Upon review of the parties' submissions, the case record, and applicable law, the court will grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.

## I. Statement of the Case

In their complaint seeking a declaratory judgment and injunctive relief, Plaintiffs challenge the adequacy of Defendants' compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq. and the Federal Aid Highway Act ("FAHA"), 23 U.S.C. §

109(h),[1] prior to approval of a 72-mile freeway between Interstate 81 near the City of Roanoke and the Virginia/North Carolina state line ("I-73"). (Complaint, ¶ 1.) The general location for the "I-73 Project" was designated by Congress in the 1990s as part of a multi-state "high-priority corridor," stretching from Charleston, South Carolina to Sault Ste. Marie, Michigan. (Complaint, ¶ 18.)

More specifically, Plaintiffs challenge FHWA's March 30, 2007 Record of Decision ("ROD") (http://www.virginiadot.org/projects/resources/I-73ROD-web.pdf), which approved construction of the I-73 Project as the aforementioned 72-mile freeway. The selected design, also known as the Adopted Location Corridor ("ALC"), consists of improvements to existing Interstate 581 and U.S. Route 220 for approximately six miles and new construction for 66 miles. (ROD at 3.) The ALC was the build alternative identified in the Final Environmental Impact Statement ("FEIS"),[2] circulated for public review in December 2006. (FEIS, Vol. 1, Administrative Record ("AR") Bates #40962-41456.) On April 18, 2007, notice was published in the Federal Register advising the public that the ROD was FHWA's final approval of the I-73 Project for purposes of 23 U.S.C. § 139(l)(1), triggering the 6-month statute of limitations period

---

[1] As Plaintiffs claims arise under NEPA and FAHA, the court properly has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[2] According to regulations promulgated by the Council on Environmental Quality:

> The primary purpose of an environmental impact statement is to serve as an action-forcing device to insure that the policies and goals defined in the Act are infused into the ongoing programs and actions of the Federal Government. It shall provide full and fair discussion of significant environmental impacts and shall inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment. . . . Statements shall be concise, clear, and to the point, and shall be supported by evidence that the agency has made the necessary environmental analyses. An environmental impact statement is more than a disclosure document. It shall be used by Federal officials in conjunction with other relevant material to plan actions and make decisions.

40 C.F.R. § 1502.1

for judicial review of agency action taken to that point. Plaintiffs then timely filed their complaint on October 15, 2007.

Plaintiffs argue that they are entitled to summary judgment because FHWA violated NEPA by failing to adequately consider: (1) build alternatives to the ALC, including an upgrade alternative to Route 220 that utilizes "access management" techniques (the "Access Management Alternative");[3] (2) the alternative of postponing the EIS until such time that funding for the I-73 Project becomes available; and (3) the environmental impacts of I-73's planned phased construction. Defendants oppose, and also argue that summary judgment should be entered in their favor because they have complied with NEPA's requirements. The court heard oral arguments on these matters on May 19, 2009.

## II. Statutory Framework and Standards of Review

### A. NEPA

NEPA requires that whenever a major federal action would "significantly affect[] the quality of the human environment," the responsible federal agencies must prepare a detailed statement discussing the proposed action's environmental impact as well as alternatives to the proposed action. See 42 U.S.C. § 4332(2)(C). "NEPA imposes no substantive environmental rules," instead creating procedures whereby agency officials must "assess and consider the environmental consequences of their proposed actions." New River Valley Greens v. U.S. Dept. of Transp., No. 97-1978, 1998 WL 633959, at *2 (4th Cir. Sep. 10, 1998).

---

[3] Access management is a method to increase roadway capacity and safety, and includes techniques such as:

> controlling new private access to the roadway through permit review, reducing the number of existing access points through techniques such as the creation of frontage roads and shared entrances, the consolidation of crossovers, improvements to intersections and roadway geometry, and modifications to traffic control devices.

(Pls. Summ. J. Mem. at 26-27, Dkt. No. 58.)

3

Claims arising under NEPA are subject to judicial review pursuant to the Administrative Procedures Act ("APA"). Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177, 189 (4th Cir. 2009). This narrow standard of review focuses on whether the agency actions are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A); Marsh v. Oregon Natural Resources Council, 490 U.S. 360, 378 (1989) ("[T]he reviewing court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.") (internal quotation omitted). This means that a court should assess whether the agency's decision "is within the bounds of reasoned decisionmaking." Baltimore Gas & Elec. Co., v. Natural Res. Def. Council, 462 U.S. 87, 105 (1983). Specifically with regard to NEPA, a reviewing court must "insure that the agency has taken a 'hard look' at the environmental consequences," and guard against "substituting its judgment for that of the agency as to the environmental consequences of its actions." Kleppe v. Sierra Club, 427 U.S. 390, 410 n.21 (1976).

### B. Summary Judgment

Generally, summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this determination, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

When reviewing the decision of an administrative agency, however, a motion for

4

summary judgment "stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review." Krichbaum v. Kelley, 844 F. Supp. 1107, 1110 (W.D. Va. 1994), aff'd, 61 F.3d 900 (4th Cir. July 31, 1995) (unpublished table decision). Therefore, a movant's "burden on summary judgment is not materially different from his ultimate burden on the merits." Id.

### III. Analysis

### A. Consideration of Alternative Designs

Plaintiffs contend that FHWA did not genuinely consider alternatives to the ALC, and that the review process was biased by including FHWA's judgment that Congressional intent favored an interstate design as one of the primary purposes of the I-73 Project. More specifically, Plaintiffs claim that FHWA failed to adequately consider their preferred Access Management Alternative, a decision that Plaintiffs believe was arbitrary, capricious, and contrary to NEPA. (Pls. Summ. J. Mem. at 16.)

The court finds that FHWA's consideration of alternative designs for the I-73 Project was reasonable and thorough, and complied with NEPA's requirements. (See ROD at 1-7.) As the ROD reflects, the exhaustive process spanned many years and evaluated the feasibility and environmental consequences of a range of alternatives. (See id.) In short, FHWA gave the requisite "hard look," sufficiently "explain[ing] its course of inquiry, its analysis, and its reasoning, and show[ing] a rational connection between its decision-making process and its ultimate decision." Manufactured Housing Institute v. U.S. Envtl. Prot. Agency, 467 F.3d 391, 399 (4th Cir. 2006) (internal quotation omitted).

Further, the court finds that it was reasonable for FHWA to interpret Congressional intent as favoring an Interstate design, and then to include effectuation of this intent as part of the

5

purpose and need of the I-73 Project.

The ROD summarized the purpose and need for the I-73 Project to include the following components:

> a) Improve the safe movement of goods and people in the Route 220 corridor;
> b) Provide for the economic growth, economic vitality, and maintenance of existing economic competitiveness in the study area;
> c) Improve operations, access and capacity for vehicular and freight movement in the study area and other locations between Michigan and South Carolina;
> d) Enhance general mobility and transportation linkage in the study area and through the broader Michigan to South Carolina travel shed; and
> e) Address Congressional intent for the high priority corridor.

(ROD at 3.)[4] Plaintiffs object to inclusion of the last purpose and need, arguing that "nothing in either the statutory authorization of I-73 or its legislative history requires that I-73 be an interstate freeway." (Pls. Summ. J. Mem. at 20, Dkt. No. 58.) In support of their argument, Plaintiffs point out that FHWA acknowledges that there is no requirement for states to construct their segment of the proposed I-73 corridor to interstate standards, other states such as West Virginia are not building I-73 as an Interstate freeway, and that the U.S. Army Corps of Engineers voiced concerns about the lack of documentation regarding the need for an Interstate design. (Id. at 21-23.)

After reviewing the ROD and relevant portions of the record, the court finds that FHWA's interpretation of Congressional intent is entitled to deference under Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984). When, as in the instant case, Congress is silent or ambiguous with respect to a certain issue, a court must uphold an agency's

---

[4] These same objectives were consistently identified throughout I-73 Project. (See Draft Environmental Impact Statement at 1-5, AR Bates #13925 and FEIS Vol. 1 at 1-2, AR Bates #40995.)

interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute. <u>Chevron</u>, 467 U.S. at 843-44. Here, the court finds FHWA's interpretation of Congressional intent "is based on a permissible construction of the statute," <u>id.</u> at 833, for the reasons specified in the ROD.[5] The fact that other states have chosen a different design path does not establish that FHWA abused its discretion in so determining Congressional intent.

The court also finds that FHWA's decision to not carry forward the Plaintiffs' preferred Access Management Alternative for more detailed analysis was "within the bounds of reasoned decision-making." In the ROD, FHWA explained that this alternative was not carried forward because the Virginia Department of Transportation ("VDOT") had:

> no <u>existing</u> legal authority to control that access . . . . For this reason, FHWA does not consider access control alternatives to be reasonable because they are outside the control of FHWA and can't be implemented with any degree of certainty or control by VDOT for the life of the project and are wholly dependent upon the localities for their success.

(ROD at 7 (emphasis added). <u>See also</u> Defs. Summ. J. & Opp. Mem at 23-24, Dkt. No. 60.)

---

[5] FHWA recognizes that there is no mandate that states must construct their I-73 segments as Interstates, though in its judgment, such a design would be Congress' preference for the following reasons:

> FHWA believes that despite the flexibility provided by Congress regarding the design of Interstate 73, it is the intent of Congress that portions of Interstate 73 be constructed to Interstate design standards. This position is based, in part, upon a response from Mr. Fred Skaer, Director of FHWA's Office of National Environmental Policy Act Facilitation in Washington, D.C. in an electronic message to Ms. Rebecca Bier dated January 22, 1999, wherein he cited the "Interstate 73" designation by Congress and several laws enacted since ISTEA by Congress which strengthened the identification of the 73 high priority corridor as an Interstate highway. For example, Congress has amended existing legislation and passed additional legislation designating the section of Interstate 73 from Charleston, South Carolina to Portsmouth, Ohio as a future part of the Interstate system subject to the conditions that the section to be added meets Interstate design criteria and connects to an existing Interstate segment.

(ROD at 3.)

Plaintiffs do not dispute the legal landscape reflected in the above ROD excerpt,[6] but rather contend that subsequent Virginia legislation increased the powers of VDOT to implement access management techniques. (See Pls. Summ. J. Mem. at 29 ("In fact, VDOT now has additional authority to manage access on all Virginia's primary and secondary roads, including principal arterials . . . which went into effect[] July 1, 2008.") (emphasis added).)[7] Thus, Plaintiffs essentially argue that even if the Access Management Alternative was not a reasonable option up to when the ROD was issued on March 30, 2007, it soon became reasonable after the new legislation.

The court finds that this argument is a non-starter, as the operative issue is the reasonableness of the ROD at time of its issuance. To be sure, even after issuance of the ROD, FHWA has a continuing duty to internally re-evaluate "whether or not the approved environmental document . . . remains valid" for the I-73 Project, "prior to requesting any major approvals or grants." 23 C.F.R. § 771.129(c). Further, the FEIS must be supplemented if FHWA determines that "(1) [c]hanges to the proposed action would result in significant environmental impacts that were not evaluated in the EIS; or (2) [n]ew information or circumstances relevant to environmental concerns and bearing on the proposed action or its impacts would result in significant environmental impacts not evaluated in the EIS." 23 C.F.R. §

---

[6] Plaintiffs also argue that FHWA's stated rationale for not carrying forward the Access Management Alternative was improper, even before the new legislation, because an EIS must "[i]nclude reasonable alternatives not within the jurisdiction of the lead agency." See 40 C.F.R. § 1502.14(c) (emphasis added.) The court disagrees. At the time the ROD was issued, implementation of access management techniques on U.S. Route 220 was not under the control of any federal agency (see Pls. Summ. J. Mem. at 3, 27-28.); rather, authority was vested in the Commonwealth Transportation Board. See Va. Code §§33.1-58 and 59. Therefore, the court finds the ROD did not violate the requirements of 40 C.F.R. § 1502.14(c).

[7] On April 4, 2007, the Virginia General Assembly unanimously approved legislation (HB 2228 and SB 1312) that provided VDOT with new authority to manage access to state highways, for purposes that include "reduc[ing] the need for new highways and road widening by improving the performance of the existing systems of state highways." Va. Code § 33.1-198.1(B)(4). New VDOT regulations concerning access management for principal arterials became effective on July 1, 2008. (See id; Regulations available at http://www.virginiadot.org/PROJECTS/ accessmgt/default.asp.)

771.130(a).[8]  However, the ROD is an important milestone in a project life-cycle, and is properly

reviewable as a "final agency action." Jersey Heights Neighborhood Ass'n v. Glendening, 174

F.3d 180, 186 (4th Cir. 1999); Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997).

## B. Postponement Alternative

Plaintiffs also argue that in light of:  (1) the ROD's acknowledgment that funding for the

I-73 Project was unknown and uncertain, (2) that FHWA anticipates construction to proceed in

operationally independent phases as funding becomes available, and (3) that construction may

not begin for many years, if ever, "FHWA should have considered the reasonable alternative of

postponing finalizing the EIS, in order [to] ensure that there is a full NEPA review of the impacts

and alternatives to the project that is ultimately approved and funded for construction."  (Pls.

Summ. J. Mem. at 37-38.)  The court disagrees.  As stated above, the ROD is an important

milestone for the I-73 Project.  The specter of future challenges does not mean that FHWA was

required to consider a postponement alternative, as the court finds that such an alternative would

not satisfy the I-73 Project's purpose and need.  Of course, the post-ROD considerations and

contingencies raised by Plaintiffs may trigger re-evaluations, supplementations and later judicial

review (see supra at 8 and n.8), as well as prevent FHWA from obtaining necessary permits,[9] but

these issues are not properly before the court at this time.

## C. Impact of Phased Construction

Plaintiffs also contend that FHWA violated NEPA by failing to consider the

---

[8] In addition, FHWA acknowledges that future decisions regarding the I-73 Project will be subject to additional judicial review. Specifically, FHWA states that that a re-evaluation of the I-73 Project "could result in the issuance of a [Supplemental Environmental Impact Statement ("SEIS")], an Environmental Assessment, or no further action," but that even a future "decision not to prepare a SEIS is a matter that will be subject to judicial review." (Defs. Reply at 10, 13, Dkt. No. 65 (emphasis added).)

[9] For example, the U.S. Army Corps of Engineers has indicated that it would "need a fuller evaluation of an improved Route 220 as an alternative . . . in order to evaluate a permit application for this project." (ROD at 18.)

environmental impacts of "phased construction," and "the possibility that I-73 may never be fully funded, or may never [be] built in its entirety." (Pls. Summ. J. Mem. at 46.) To support this argument, Plaintiffs rely heavily on a Tenth Circuit decision—Davis v. Mineta, 302 F.3d 1104 (10th Cir. 2002). At issue in Davis was a proposed highway project in Utah that would have created a new freeway interchange, constructed a new bridge, and widened and extended a five-lane freeway. Id. at 1109-10. This project was to proceed in two phases: (1) the new interchange, and (2) the bridge and freeway construction. Id. at 1110. While Phase I was to be completed in "approximately three to four years, there [was] no definitive timetable established for the completion of Phase II." Id. The Davis court found that the defendants' environmental assessment improperly failed to consider the "potentially significant impacts from phasing," as Phase II "may be delayed for a decade or more, or perhaps permanently." Id. at 1124 & n.13.[10] In so holding, the Davis court rejected efforts to characterize such substantial delays as "temporary" or construction-related," in which case "a finding of no significant impact from the phased construction could [have been] upheld." Id. at 1124 n.13 (citing Slater, 120 F.3d at 635).

Plaintiffs seek to compare the instant case to Davis, but argue that the circumstances here are "even more egregious." (Pls. Summ. J. Mem. at 47.) Presently, with the exception of two relatively small Congressional earmarks, "there is no designated source of funding to implement Interstate 73. Because no source of overall funding has been identified for the implementation of

---

[10] The Davis plaintiffs had identified two potential significant impacts caused by phasing the project:

> (1) for an extended period, persons living along the proposed expansion of 11400 South may suffer from pollution, noise and safety impacts as the result of living with a planned, but unconstructed, five-lane highway project made necessary by the first phase of the Project; and (2) it is possible that the second phase of the Project will never be completed because of permitting issues, resulting in many environmental problems caused by a major interchange that dumps traffic onto an unimproved two-lane road.

Davis, 302 F.3d at 1124.

Case 7:07-cv-00587-JCT   Document 70   Filed 07/20/09   Page 10 of 12   Pageid#: 534

Interstate 73 and there are no plans for its overall implementation, it is anticipated that the project will be constructed in operationally independent phases as funding becomes available or allows." (ROD at 12.)[11]

Though Plaintiffs make a meritorious argument regarding the possible impacts of phased construction, the court is ultimately not persuaded that the rationale of Davis should apply to the present case. As stated supra, the ALC for the I-73 Project stretches for 72 miles, including 66 miles of new construction.[12] In contrast, the proposed freeway expansion in Davis appears to have been at most a few miles.[13] The court finds that given the large size and scope of the I-73, any delays in construction may rightly be categorized as "temporary" or "construction-related," and therefore any impacts from the "phased" construction would not be significant when viewed in context of the overall project. See Davis, 302 F.3d at 1124 n.13; Slater, 120 F.3d at 635.

Further, the court finds that FHWA's consideration of the environmental impacts of the I-73 Project as a collective whole is consistent with the applicable NEPA regulations. In this regard, the court agrees with FHWA that there is no regulatory requirement for individual I-73 Project segments to "connect logical termini" or have "independent utility" as they are individually constructed. See 23 C.F.R. § 771.111(f). Rather, by the NEPA regulation's explicit terms, these requirements apply to "the action evaluated in each EIS," which here is the complete

---

[11] Plaintiffs add that that there is an "absence of any information in the NEPA studies that would allow for an assessment of the potential impacts of this phased construction," including no description of "the number, length, termini, timing, prioritization, and construction sequencing." (Pls. Summ. J. Mem. at 47-48.)

[12] As stated by the Defendants, "[i]t is readily recognized on a project of this length and magnitude that it will need to be contracted and constructed in segments of reasonable length," as "regardless of the funding issue . . . . [t]here is no contractor that has enough manpower or equipment that could construct a 72 mile project simultaneously." (Defs. Summ. J. & Opp. Mem. at 57-58 & n.18).

[13] Though the Davis decision does not state the precise length of the proposed freeway expansion, the court makes its assessment based upon a review of Davis Exhibit 1 (a not-to-scale map of the affected area, see Davis, 302 F.3d at 1110 n.1, 1127), as well as current satellite images of the area depicted in Exhibit 1.

11

I-73 Project. Id.[14]

Therefore, the court finds that any delays due to the phased nature of the I-73 Project's construction are properly characterized as only temporary or construction-related, and that FHWA's decision to not specifically evaluate the impacts of phased construction was within the bounds of reasoned decision-making.

## IV. Conclusion

For the reasons stated above, the court finds Defendants' motion for summary judgment must be granted, and Plaintiffs' motion for summary judgment denied.[15] An appropriate order shall issue this day.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER:** This _20th_ day of July, 2009

_James C. Turk_
Senior United States District Judge

---

[14] Though there is no regulatory requirement, consistent with its internal policy (see Defs. Reply at 6), FHWA still "anticipate[s] that the [I-73 Project] will be constructed in operationally independent phases as funding becomes available or allows." (ROD at 12.)

[15] Although neither party's summary judgment arguments addressed Count Three (violation of NEPA for failure to adequately analyze adverse impacts of air pollution) or Count Four (violation of FAHA) of Plaintiffs' Complaint, the court will enter summary judgment for Defendants on all Counts. Final disposition of this administrative review action must come via summary judgment, and the court finds that Plaintiffs' failure to argue these Counts in accordance with the agreed upon briefing schedule (see Dkt. Nos. 48 and 62) constitutes waiver. In addition, Count Four also clearly fails on its merits. It alleges that FHWA failed to determine whether the I-73 Project was "in the best overall public interest," as required under FAHA regulations. (Complaint, ¶¶ 81-86 (citing 23 U.S.C. § 109(h)).) However, the FAHA regulations do not proscribe an independent process outside of NEPA's implementing process, and the "ROD itself is a decision that the selected alternative is in the 'best overall public interest." Audubon Naturalist Society of the Central Atl. States, Inc. v. U.S. Dept. of Transp., 524 F. Supp.2d 642, 706-07 (D. Md. 2007). See also Jersey Heights Neighborhood Ass'n, 174 F.3d at 186 (through an ROD, FHWA certified compliance with FAHA).

Case 7:07-cv-00587-JCT   Document 70   Filed 07/20/09   Page 12 of 12   Pageid#: 536